| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

UNITED STATES OF AMERICA §
§
*versus* § CASE NO. 4:17-CR-153
§
CHRISTOPHER RAYMER §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Christopher Raymer's ("Raymer") Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#55), wherein Raymer requests that the court reduce his sentence to time served and/or release him to home confinement. Raymer identifies the Coronavirus Disease 2019 ("COVID-19") as an extraordinary and compelling reason to warrant his release from imprisonment. United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. The Government filed a response in opposition to Raymer's motion (#58). Having considered the motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On September 13, 2017, the United States Grand Jury for the Eastern District of Texas returned a single-count Indictment charging Raymer with Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On March 27, 2018, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), Raymer entered a plea of guilty. According to his Presentence Investigation Report ("PSR"), Raymer was found responsible for 786.25 net grams of methamphetamine (Ice). On August 2, 2018, the court accepted Raymer's plea and plea agreement and sentenced him to 180

months' imprisonment followed by 5 years' supervised release. Raymer is currently housed at FMC Fort Worth in Fort Worth, Texas, with a projected release date of May 24, 2031.

On June 1, 2020, the court received Raymer's motion. Raymer asserts that he submitted a request to the warden of his facility on April 26, 2020, and that he has not received a response. Raymer contends that he has asthma, bronchitis, borderline obesity, and fatty liver disease—health conditions which increase his susceptibility to complications from COVID-19—and that he was recently diagnosed with COVID-19. Both Probation and the Government confirm that Raymer tested positive. Probation indicates that Raymer is listed as recovered and is being housed in isolation. The Government states that Raymer tested positive on May 7, 2020, and provides documentation showing that he was released from isolation on May 18, 2020, because he was asymptomatic.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a

> determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait

for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

Probation was unable to verify Raymer's claim that he submitted a request for compassionate release with the warden of his facility. Even if Raymer complied with the exhaustion requirement by submitting a request to the warden and waited 30 days before filing the pending motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his term of imprisonment and release him to home confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

In the instant motion, Raymer, age 44, requests compassionate release due to his medical conditions. The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical conditions when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Here, according to Raymer's PSR, his medical history includes asthma and bronchitis, for which he is prescribed medication. The Government provides a medical record indicating that after Raymer tested positive for COVID-19 on May 7, 2020, he did not exhibit a fever or other symptoms while he was in isolation for more than 10 days. Consequently, he was discharged from isolation on May 18, 2020. Even if Raymer also has

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

borderline obesity and fatty liver disease, his medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes his ability to provide self-care. Hence, Raymer has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.

Raymer's request for compassionate release potentially falls into the fourth catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Raymer for any reason. In exercising its discretion, the court similarly finds that no extraordinary and compelling

reasons exist in relation to Raymer's situation. Raymer maintains that his medical conditions, especially asthma and bronchitis, place him at higher risk of contracting and expiring from COVID-19. As of June 23, 2020, the BOP reports 29 active cases, 11 deaths, and 579 recovered cases of COVID-19 among a total of 1,376 inmates and 5 active cases and 1 recovered case of COVID-19 among staff at FMC Fort Worth where Raymer is housed. Although Raymer, age 43, expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").

In fact, Raymer already contracted COVID-19, and the BOP provided adequate care by placing him in isolation and actively monitoring his condition. Because Raymer remained afebrile and asymptomatic while in isolation for more than 10 days after he tested positive for COVID-19, he was released from isolation per interim guidance from the Centers for Disease Control and Prevention ("CDC"), with his case considered resolved. Hence, it appears that the risks of complications or death due to COVID-19 that he contends are extraordinary and compelling reasons for compassionate release are no longer germane. Thus, Raymer has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence.

The court also finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). The nature and circumstances of Raymer's offense entail his participation in a drug-trafficking conspiracy involving the distribution of more than 786 grams of methamphetamine (actual). According to his PSR, Raymer also assisted the group in purchasing ingredients to manufacture counterfeit pharmaceuticals from the Dark Web and had a reputation as a seller of methamphetamine, cocaine, Ecstasy ("MDMA"), and Gamma-Hydroxybutyrate ("GHB") in the Fort Worth, Texas, area. A confidential source made controlled purchases of methamphetamine from Raymer on several occasions. Moreover, a search of Raymer's residence in Arlington, Texas, yielded 628.04 net grams of methamphetamine, MDMA, and other drugs, drug paraphernalia, and $28,840.00 in United States currency. Raymer had prior convictions for manufacture/delivery of a controlled substance and driving while intoxicated and was parole at the time of the offense of conviction. He further

reported a history of poly-substance abuse until the time of his arrest. Consequently, the court cannot conclude that Raymer would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the CDC, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. As of June 23, 2020, the BOP has placed 4,418 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP

personnel and inmates. He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)). Here, Raymer's track record is similarly a poor one.

In short, Raymer has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every

prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.*

III.   Conclusion

Consistent with the foregoing analysis, Raymer's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (#55) is DENIED.

SIGNED at Beaumont, Texas, this 23rd day of June, 2020.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE